1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  LUIS ORTIZ,                                        No.  2:21-CV-1563-KJM-DMC

12              Plaintiff,

13       v.                                            <u>FINDINGS AND RECOMMENDATIONS</u>

14  COMMISSIONER OF SOCIAL
    SECURITY,
15
                Defendant.
16

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final

21  decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).  Pending before the

22  Court are the parties' briefs on the merits, ECF Nos. 17 and 21.

23              The Court reviews the Commissioner's final decision to determine whether it is:

24  (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

25  whole.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

26  more than a mere scintilla, but less than a preponderance.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521

27  (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

28  a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole,

1  including both the evidence that supports and detracts from the Commissioner's conclusion, must

2  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

3  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

4  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

5  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

6  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

7  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

8  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

9  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

10  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

11  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

12  Cir. 1988).

13          For the reasons discussed below, the Court recommends the Commissioner's final

14  decision be affirmed.

15

16                          **I.  THE DISABILITY EVALUATION PROCESS**

17          To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R.

19  §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20          Step 1        Determination whether the claimant is engaged in
                          substantial gainful activity; if so, the claimant is presumed
21                        not disabled and the claim is denied;

22          Step 2        If the claimant is not engaged in substantial gainful activity,
                          determination whether the claimant has a severe
23                        impairment; if not, the claimant is presumed not disabled
                          and the claim is denied;
24

25          Step 3        If the claimant has one or more severe impairments,
                          determination whether any such severe impairment meets
26                        or medically equals an impairment listed in the regulations;
                          if the claimant has such an impairment, the claimant is
27                        presumed disabled and the claim is granted;

28  / / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

1

## II.  THE COMMISSIONER'S FINDINGS

2      Plaintiff applied for social security benefits on April 1, 2019.  See CAR 21.[1]  In

3  the application, Plaintiff claims disability began on January 1, 2014.  See id.  Plaintiff's claim was

4  initially denied.  Following denial of reconsideration, Plaintiff requested an administrative

5  hearing, which was held on November 4, 2020, before Administrative Law Judge (ALJ) Arthur

6  Zeidman.  In a December 29, 2020, decision, the ALJ concluded Plaintiff is not disabled based on

7  the following relevant findings:

8
          1.    The claimant has the following severe impairment(s): diabetes
                mellitus;
9

10         2.    The claimant does not have an impairment or combination of
                impairments that meets or medically equals an impairment listed in
                the regulations;
11

12         3.    The claimant has the following residual functional capacity:  the
                claimant can perform the full range of medium work;

13

          4.    Considering the claimant's age, education, work experience,
14               residual functional capacity, and the Medical-Vocational
                Guidelines, there are jobs that exist in significant numbers in the
15               national economy that the claimant can perform.

16      See id. at 21-31.

17  After the Appeals Council declined review on July 7, 2021, this appeal followed.

18

19

## III.  DISCUSSION

20      In his opening brief, Plaintiff argues: (1) the ALJ erred at Step 2 in concluding that

21  Plaintiff's polyarthritis and lumbar degenerative disc disease were not severe impairments; (2) at

22  Step 4, the ALJ failed to properly evaluate opinions offered by Dr. Sharma and the state agency

23  consultative physicians; and (3) the ALJ further erred at Step 4 because he did not take all of

24  Plaintiff's impairments, including non-severe impairments, into account in determining Plaintiff's

25  residual functional capacity.

26  ///

27  _____

28      [1]     Citations are the to the Certified Administrative Record (CAR) lodged on October
   5, 2022, ECF No. 14.

1    **A.    Severity Determination**

2         To qualify for benefits, the plaintiff must have an impairment severe enough to

3    significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§

4    404.1520(c), 416.920(c).[2]   In determining whether a claimant's alleged impairment is

5    sufficiently severe to limit the ability to work, the Commissioner must consider the combined

6    effect of all impairments on the ability to function, without regard to whether each impairment

7    alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996);

8    see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or

9    combination of impairments, can only be found to be non-severe if the evidence establishes a

10   slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

11   Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

12   1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

13   impairment by providing medical evidence consisting of signs, symptoms, and laboratory

14   findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

15   is insufficient.  See id.

16        At Step 2, the ALJ concluded that Plaintiff's only severe impairment is diabetes

17   mellitus.  See CAR 24.  The ALJ also concluded that Plaintiff's other impairments caused only

18   mild symptoms, were not alleged by Plaintiff to be severe, or did not result in any continuous

19   exertional or non-exertional functional limitations.  See id.  Plaintiff contends that the ALJ erred

20   with respect to polyarthritis and lumbar degenerative disc disease.  See ECF No. 17-1, pgs. 17-19.

21        As to the severity of polyarthritis and lumbar degenerative disc disease, the ALJ

22   stated as follows:

23          The undersigned has paid particular attention to the claimant's
              polyarthritis, lumbar degenerative disc disease, and obesity. The record
24          shows that the claimant generally complained of back pain in relation to
              specific injuries. At many of the medical visits for which he sought care
25          for his back pain, it was reported that he was working in construction and

26   _____

     [2]      Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
27   pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
     carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
28   appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
     in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

lifting very heavy objects and materials, which appeared to cause or at least exacerbate his back pain. Objective exams generally demonstrated normal functioning of the spine, but tenderness and decreased range of motion when he complained of back pain. When at the emergency department, the claimant generally was given pain medications and/or muscle relaxants with which the claimant reported significant and immediate alleviation of his symptoms. The claimant did not use an assistive device to ambulate. Laboratory imaging also showed no more than minimal abnormalities. Treatment for his back pain was very conservative and also very infrequent (see citations above).

A similar analysis is also applicable to his polyarthritis. Only very occasionally did medical sources note deficits in his joints. More generally, the claimant exhibited normal range of motion and muscle strength in all extremities. Laboratory imaging largely showed no more than mild abnormalities throughout his body, such as in his hands, wrists, hips, knees, and ankles. The claimant did not seek frequent or consistent treatment for his polyarthritis. Furthermore, as discussed above, the claimant worked in construction throughout the relevant period, lifting heavy objects, which is inconsistent with the claimant's significant allegations in regards to his polyarthritis (see citations above).

CAR 24.

Plaintiff argues that the ALJ erred in concluding that Plaintiff's polyarthritis and degenerative disc disease are not severe impairments. See ECF No. 17-1, pgs. 17-19. According to Plaintiff, "the ALJ impermissibly set his own lay interpretation of the record against medical experts when turning to the ALJ's analysis under Step Two." Id. at 17-18.

Plaintiff's argument is unpersuasive. As the ALJ noted, during the time period at issue Plaintiff worked in construction which involved lifting heavy objects, which activity "appeared to cause or at least exacerbate his back pain." This supports the ALJ's conclusion that Plaintiff's degenerative disc disease and polyarthritis do not limit Plaintiff's ability to work, let alone create more than a minimal impact on the ability to work. Furthermore, as discussed below, the ALJ considered any limitations posed by Plaintiff's degenerative disc disease and polyarthritis at Step 4 when determining Plaintiff's residual functional capacity. Thus, any error which the ALJ may have committed at Step 2 was rendered harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006)).

/ / /

/ / /

6

1

**B.      Residual Functional Capacity Determination**

2

Residual functional capacity is what a person "can still do despite [the

3

individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

4

Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

5

"physical and mental capabilities").  Thus, residual functional capacity describes a person's

6

exertional capabilities in light of his or her limitations.[3]  An ALJ's RFC finding must include all

7

of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

8

In this case, the ALJ concluded that Plaintiff has the residual functional capacity to

9

perform the full range of medium work.  See CAR 26.  Plaintiff argues generally that this

10

determination is not based on substantial evidence.  See ECF No. 17, pg. 15.  More specifically,

11

Plaintiff contends that the ALJ erred with respect to evaluation of medical opinions.  See id. at

12

15-17, 19-25.  Plaintiff also asserts that, in determining residual functional capacity, the ALJ

13

erred by failing to consider all of Plaintiff's impairments, including those found to be non-severe

14

at Step 2.  See id. at 25-26.

15

1.      Evaluation of Medical Opinions

16

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue,

17

533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

18

explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

19

2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

20

opinion over another.  See id.

21

_____

22

[3]      Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart

23

P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20

24

C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§

25

404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§

26

404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§

27

404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20

28

C.F.R. §§ 404.1567(e) and 416.967(e).

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions

from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ considered medical opinions offered by the state agency physical and psychological consultative doctors as well as state agency examining doctors Satish Sharma, M.D., and Casey David Brodhead, Psy.D.  See CAR 28-29.  Plaintiff challenges the ALJ's evaluation of opinions offered by Dr. Sharma and the physical consultative doctors.  See

9

1    ECF No. 17-1, pgs. 16-17, 19-25.  Plaintiff does not present any arguments as to opinions relating
2    to his mental residual functional capacity.

3          The ALJ found the opinions regarding Plaintiff's physical capacity offered by Dr.
4    Sharma and the state agency consultative doctors to be unpersuasive.  See CAR 28-29.  Plaintiff
5    primarily argues that, absent any accepted medical opinion evidence, the ALJ impermissibly
6    substituted his own lay medical opinion for those of doctors when formulating Plaintiff's residual
7    functional capacity.  See ECF No. 17-1, pgs. 16-17, 19-25.

8          Plaintiff's general argument is unpersuasive.  As Defendant correctly notes,
9    determining residual functional capacity is an administrative task for which the ALJ is
10   responsible.  See 20 C.F.R. § 404.1546(c).  In reaching a finding regarding a claimant's residual
11   functional capacity, the ALJ must consider the record as a whole, not just medical opinions.  See
12   20 C.F.R. § 404.1545(a)(3); see also Bailey v. Kijakazi, 856 F. App'x 663, 664 (9th Cir. 2021)
13   (unpublished).  Where there are conflicts in the evidence, it is the ALJ's prerogative to resolve
14   them.  See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Medical
15   opinion evidence is but one of many categories of evidence in the record as a whole that the ALJ
16   must consider in determining residual functional capacity.  See 20 C.F.R. § 404.1513(a); see also
17   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  The Ninth Circuit has held that
18   ALJ's are qualified, in reviewing the record as a whole, to "form[] conclusions about medical
19   evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot
20   work."  Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022).

21         Plaintiff cites Tackett v. Apfel, 180 F.3d 1094 (9th Cir. 1999), in support of the
22   proposition that the ALJ in this case erred by independently assessing clinical findings and
23   rendering his own medical opinion.  See ECF No. 17-1, pg. 17.  This case is distinguishable.  In
24   Tackett, the Ninth Circuit disagreed with the ALJ's rejection of medical opinion evidence
25   because there was insufficient other evidence in the record supporting the ALJ's conclusion.  See
26   180 F.3d at 1102-03.  The Ninth Circuit's conclusion was not based on a categorical rule that
27   ALJ's cannot reach findings which are inconsistent with medical opinion evidence.  See id.
28   While the Court agrees with Plaintiff that an ALJ cannot arbitrarily substitute his own judgement

10

for competent medical opinion evidence, see Banks v. Barnhart, 434 F. Supp. 3d 800, 805 (C.D. Cal. 2006) (cited by Plaintiff), in this case the ALJ did not arbitrarily reject the medical opinions offered by Dr. Sharma and the state agency consultative doctors.  Instead, as discussed below, the ALJ provided sufficient non-arbitrary reasons for rejecting the medical opinion evidence of record.

Regarding opinions offered by Dr. Sharma, the ALJ stated as follows:

State consultative examiner Satish Sharma, M.D., opined in August 2019 that the claimant is limited to light work with occasional bending, stooping, climbing stairs and ramps, kneeling, and crouching (3F). The undersigned does not find this opinion persuasive. Dr. Sharma's opinion is somewhat supported by his own clinical evaluation, in which he observed that the claimant had tenderness and decreased range of motion of the spine, but without evidence of radiculopathy, and no other abnormalities in his other body systems (Id.). However, such clinical observations were very infrequent in the record and only mild abnormalities were generally noted on clinical and laboratory testing, which did not require consistent or intensive treatment (1F/7-9, 14, 24-26; 2F/5, 32-33, 58, 65-67, 107, 145, 147, 149, 151, 153, 155; 3F; 4F/1-2; 5F/2-3, 13-14; 6F/7, 10-11, 20, 23; 8F/3-6). Thus, this opinion is not generally consistent with the record in its entirety. As explained above, the undersigned has limited the claimant to the full range of medium work based on his diabetes mellitus and associated complications, his conservative treatment and frequent non-compliance with the treatment, and his reported ability to engage in various activities of daily living, including working in construction where he handled very heavy items and materials (1F/7-8, 2F/31-33, 49-51, 65-67, 79-81; 3F; 6F/10-11; 8F/54).

CAR 29.

The ALJ stated as follows with respect to the agency physical consultative doctors' opinions:

The undersigned finds the prior administrative medical findings of the Disability Determination Services (DDS) state-agency consultants not entirely persuasive. On each occasion, the medical consultants found that the claimant could lift and/or carry 25 pounds, frequently climb ramps and stairs, balance, stoop, and crouch, and occasionally kneel, crawl, and climb ladders, ropes or scaffolds (1A; 2A; 3A; 8A). On the one hand, these findings are supported by a thorough review of the evidence with citations and explanations for the claimant's limitations up to the date of evaluation. However, the medical findings are not fully consistent with the evidence of record, which shows that while the claimant had diabetes mellitus, it was treated conservatively with oral hypoglycemic medication and insulin and resulted in only minor complications including calluses, corns, and cellulitis on the feet. Further, such abnormalities generally occurred only when the claimant was not compliant with his treatment (1F/7-8, 2F/31-33, 49-51, 65-67, 79-81; 3F; 6F/10-11). Moreover, despite

1   the claimant's allegations of significant physical pain, he reportedly
2   worked in construction lifting very heavy materials and objects throughout
    the relevant period, with the latest report of going to work being in June
    2020 per the medical record (8F/54; see also 1F/12, 24; 6F/20). The
3   consultants found the claimant's polyarthritis and low back pain to be
    severe and based their residual functional capacity on these impairments
4   too. However, as discussed above, the claimant's polyarthritis and lumbar
    degenerative disc disease caused only mild symptoms on clinical and
5   laboratory testing, did not require significant medical treatment, and were
    stable and managed conservatively (1F/7-9, 14, 24-26; 2F/5, 32-33, 58,
6   65-67, 107, 145, 147, 149, 151, 153, 155; 3F; 4F/1-2; 5F/2-3, 13-14; 6F/7,
    10-11, 20, 23; 8F/3-6). In finding these impairments nonsevere, the
7   undersigned finds that the consultants' conclusions regarding these
    specific impairments are not persuasive. Thus, in finding that only the
8   claimant's diabetes mellitus is a severe impairment, the undersigned has
    considered the consultants' conclusions, and finds it appropriate to limit
9   the claimant to the full range of medium work.

10  CAR 28.

11  The Court finds that the reasons cited by the ALJ are sufficient to support his

12  conclusions and are based on substantial evidence in the record as a whole.  The ALJ properly

13  considered Plaintiff's limited and conservative treatment.  See Centanni v. Berryhill, 729 F.

14  App'x 560, 562 (9th Cir. 2018) (citing Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.

15  2008)).  The ALJ also properly considered Plaintiff's non-compliance with medication which

16  exacerbated his symptoms.  See Goldstein v. Colvin, 2014 WL 3919732, at *4 (D. Nev. 2014).

17  Further, the ALJ properly considered Plaintiff's daily activities which are inconsistent with the

18  doctors' opinions, including Plaintiff's ability to do construction work.  See Kennon v. Berryhill,

19  2017 WL 6497896, at *6 (E.D. Cal. 2017) (noting that SSR 96-8p directs consideration of

20  "evidence from attempts to work" in formulating a claimant's residual functional capacity); see

21  also Chaoprasrihomkhao v. Kijakazi, 2021 WL 5601328 at *7 (E.D. Cal. 2021) (approving of

22  ALJ's consideration of the plaintiff's history of performing medium work despite having

23  purportedly disabling impairments).  Finally, because it was not the sole factor considered, the

24  ALJ also properly cited to the lack of significant objective findings on medical examination.  See

25  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

26  / / /

27  / / /

28  / / /

12

1

2.      Consideration of Non-Severe Impairments

2

Plaintiff argues the ALJ erred at Step 4 by failing to consider all of his

3

impairments, even those that were found at Step 2 to be non-severe.  See ECF No. 17-1, pgs. 25-

4

26.  According to Plaintiff:

5

Even assuming *arguendo,* the Court finds the ALJ did not err when
he rejected the consulting opinions, the ALJ nonetheless erred when he

6

failed to consider the effect of all of Plaintiff's impairments in the RFC
assessment. The Ninth Circuit has held an RFC is defective if it fails to

7

take a claimant's limitations into account. *Valentine v. Comm'r Soc. Sec.
Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Social Security

8

Regulations require an ALJ to consider all limitations, whether severe or
non-severe, when assessing a claimant's RFC. 20 C.F.R. §§

9

404.1545(a)(2), 416.945(a)(2) ("We will consider all of your medically
determinable impairments of which we are aware, including your

10

medically determinable impairments that are not 'severe' . . . when we
assess your residual functional capacity."). An ALJ errs, therefore, if he

11

explicitly neglects to consider a non-severe limitation when assessing the
RFC. *See Hutton v. Astrue*, 491 F. App'x 850, 850-51 (9th Cir. 2012)

12

(holding that although the ALJ found that claimant's impairment of PTSD
was non-severe because it caused only "mild mental limitations in the area

13

of concentration, persistence or pace, and no episodes of
decompensation," the ALJ still was required to consider the mild

14

limitations in the RFC analysis).
In the instant case, the ALJ found that Plaintiff's polyarthritis and

15

lumbar spine impairments were not severe at Step Two (Ar. 24). Diabetes
was the only severe impairment identified by the ALJ. *Id.* Elsewhere in the

16

decision, the ALJ explicitly stated that the RFC for a full range of
"medium work" was based solely on the severe impairment of diabetes

17

(Ar. 28-29). Specifically, the ALJ stated, "in finding that only the
claimant's diabetes mellitus is a severe impairment, the undersigned has

18

considered the consultants' conclusions, and finds it appropriate to limit
the claimant to the full range of medium work." (Ar. 28). The ALJ again

19

stated "the undersigned has limited the claimant to the full range of
medium work based on his diabetes mellitus" (Ar. 29). Thus, it is clear the

20

ALJ did not include any functional limitations stemming from the plethora
of non-severe impairments, especially polyarthritis and lumbar spine

21

degenerative disc disease, identified by the ALJ at Step Two. This is an
error. . . .

22

ECF No. 17-1, pgs. 25-26.

23

24

Plaintiff's argument is not persuasive.  The ALJ in this case expressly stated that,

25

in determining residual functional capacity, he considered "all symptoms and the extent to which

26

these symptoms can reasonably be accepted as consistent with the objective medical evidence and

27

other evidence. . . ."  CAR 26.  "All symptoms" includes those that were determined to not be

28

associated with a severe impairment.  The ALJ also stated that, "[a]fter careful consideration of

13

1   the record as [a] whole," he found that Plaintiff's medically determinable impairments can

2   reasonably be expected to produce some of the alleged symptoms.  CAR 26-27.  Again, "record

3   as a whole" includes evidence relating to the impairments found to be non-severe.  Likewise,

4   "medically determinable impairments" include those which are not severe.

5          Plaintiff cites to two statements made by the ALJ in determining Plaintiff's

6   residual functional capacity which Plaintiff contends indicate the ALJ failed to consider non-

7   severe impairments.  Specifically, Plaintiff quotes the following from the ALJ's decision: "Thus,

8   in finding that only the claimant's diabetes mellitus is a severe impairment, the undersigned has

9   considered the consultants' conclusions, and finds it appropriate to limit the claimant to the full

10  range of medium work," CAR 28, and "the undersigned has limited the claimant to the full range

11  of medium work based on his diabetes mellitus," CAR 29.  As Defendant notes, however, when

12  viewing the hearing decision in its totality, neither of these statements indicates that the ALJ did

13  not also consider other evidence in the record as a whole, including evidence related to non-

14  severe impairments.  See Ervin v. Comm'r of Soc. Sec., 2022 WL 4133135, at *8 (E.D. Cal.

15  2022) (determining specific ALJ findings based on a review of the hearing decision as a whole).

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1.     Plaintiff's motion for summary judgment, ECF No. 17, be DENIED.

2.     Defendant's cross-motion for summary judgment, ECF No. 21, be GRANTED.

3.     The Commissioner's final decision be AFFIRMED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 26, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

15